IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-CV-00007-WJM-KLM

RICHARD CARROLL AND SHARON CARROLL

    Plaintiffs,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY

    Defendant.

---

## SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The parties through their legal counsel, Richard M. Kaudy, 1415 Larimer Street, Suite 300, Denver, CO. 80202, 303-623-1885, for the plaintiffs, and Andrew Scott, Walberg, Tucker & Holmes, P.C., 303-694-9300 for the defendants appeared at the scheduling conference scheduled for 10: a.m. March 5, 2012, at Courtroom C-204, Second Floor, Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado.

### 2. STATEMENT OF JURISDICTION

Jurisdiction in this court is invoked pursuant to 28 U.S.C. §1332 based on diversity of citizenship.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a. Plaintiff(s):   The plaintiffs seek contract benefits from their Underinsured Motorist coverages purchased from Allstate Fire & Casualty Co. for injuries caused from a negligent motorist, Hector Guillen, who caused a head-on crash with their vehicle in their lane of travel on a Utah highway. Both Carrolls underwent surgical procedures to their knees and to repair a broken neck for Mr. Carroll. Mrs. Carroll is retired and seeks no lost income while Mr. Carroll seeks past and future lost income because of inability to adjust insurance claims as an independent adjuster. They provided their medical and income records to Allstate and continue to provide additional records as they become available. They also seek extra-contractual damages based on Allstate's violation of Colorado law and insurance industry claim-handling standards through unreasonable delay and denial of benefits. They have continued to provide Allstate with any medical and income records as they become available without waiting to make formal disclosures. They have provided narrative reports from treating doctors and economist Jeff Opp and also interviews under oath to help the Allstate investigation and evaluation. The Carrolls claim their recoverable UIM policy limits total $600,000 while Allstate asserts that their recoverable policy limits total $350,000 per person because separate premiums were not paid for such coverages on the multiple vehicles insured for the Carrolls by Allstate but only by one omnibus premium providing UIM coverage for $350,000 per person, $500,000 per accident applicable to whatever insured vehicle was being operated at the time.

b. Defendant(s): Allstate admits that the Carrolls purchased Underinsured Motorist coverages from Allstate and that the total maximum amount of Underinsured Motorist benefits potentially available to each of the plaintiffs is in the amount of $350,000. Allstate denies the allegation that it has breached the insurance contracts, denies that it has delayed or denied provision of any covered benefits. Allstate denies that it has in any way acted unreasonably in the handling of these claims and denies it has acted in bad faith.

Allstate disputes the nature and extent of the plaintiffs' claimed injuries, damages and losses for the automobile accident and contends that the recoverable amount of such benefits is a matter of reasonable dispute. Until such time as a finder of fact reaches a decision regarding the amount of accident-related damages, there is no known amount of covered benefits due; and thus, until that time, there can be no unreasonable delay or denial of such claimed benefits.

Since discovery has not yet commenced, Allstate reincorporates herein all of the affirmative and other defenses to the claims asserted in this matter.

c. Other Parties:

None.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. On Sept. 24, 2010, a collision occurred between a vehicle operated by Richard Carroll and a vehicle operated by Hector Guillen.

2. Sharon Carroll rode as a restrained front seat passenger in her husband's vehicle in that collision.

3. The collision occurred because of the exclusive negligence of motorist Hector Guillen.

4. The collision occurred within the State of Utah near Spanish Fork, Utah.

5. The Carrolls were not negligent or responsible for causing this collision.

6. Guillen was insured by Allstate with bodily injury policy limits of $25,000 per person, $50,000 per accident.

7. The Carrolls were insured by Allstate for Underinsured Motorist coverage benefits.

8. The Carrolls assert that their UIM coverage limits total $600,000 per person.

9. Allstate asserts that the Carroll UIM coverage limits total $350,000 per person.

10. The claimed past medical and surgical bills for Richard Carroll approximate $79,380.

11. The claimed past medical and surgical bills for Sharon Carroll approximate $22,213.

12. Allstate assigned Myrna Swedell and Gerald Palmer to investigate and evaluate their claims.

### 5. COMPUTATION OF DAMAGES

Richard Carroll seeks contract damages up to his policy limits based on his calculation of his non-economic damages pursuant to C.R.S. §13-21-102.5 that are limited to $468,010 for his physical and mental pain, discomfort, driving anxiety, post-traumatic stress disorder, suffering, loss of time

-4-

and inconvenience, for physical impairment calculated to equal his non-econoimc damages, past medical expenses that approximate $80,000, future surgical expenses to be estimated based on medical determinations that he will require future surgery with the date being unknown for when the procedure is to be performed, past economic losses for lost income ranging from $261,373 to $1,037,011 based on the economist's report previously provided to Allstate. He also seeks the statutory remedial penalties for his insurer's violation of C.R.S. §10-3-1115 and non-economic damages for mental distress resulting from his insurer's bad faith also capped by Colorado statute.

Sharon Carroll seeks contract damages up to her policy limits for the damages caused by motorist Guillen for past medical expenses of $22,213, future medical expenses to be calculated, for physical impairment, and non-economic damages pursuant to Colorado statute that are limited to $468,010. She also seeks the remedial penalties provided by Colorado statute for her insurer's unreasonable delay and denial as well as non-economic damages necessitated by her insurer's bad faith also capped by Colorado statute of $468,010.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED.R.CIV.P. 26(f)

a. Date of Rule 26(f) meeting: Feb. 8, 2012.

b. Names of each participant and party he/she represented: Richard M. Kaudy appeared on behalf of the plaintiffs, Andrew Scott on behalf of the defendant.

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made: The parties expect to make Rule 26 disclosures on or before Feb. 22, 2012. The

plaintiffs have provided the defendant with supplemental medical records, reports, billings and economic materials including a report from economist Jeff Opp.

d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1: None.

e. Statement concerning any agreements to conduct informal discovery:

The plaintiffs already have begun informal discovery by providing additional medical and income records that become available. Defense counsel has participated in this approach by asking informally for additional income records regarding Mr. Carroll that Mr. Carroll has provided and will continue to provide. Income and medical records that are unavailable can be obtained by a release to Allstate that Mr. Carroll has agreed to sign based on Allstate furnishing him with a suitable release. The parties have not engaged in any settlement negotiations. Mindful of the court's recent rulings on the use of magistrates, the plaintiffs agree to engage in mediation through use of private mediators.

[Handwritten margin note: "They aren't (sic) and we aren't "negotiations." KLM]

f. To simplify discovery and avoid confusion, the plaintiffs will Bate Stamp their disclosures if necessary and ask the defendant to do the same. The plaintiffs agree in advance to use a master set of exhibits used in any depositions to be numbered sequentially from each witness forward to avoid confusion.

g. The plaintiffs do anticipate that their claims will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or

records maintained in electronic form. They do not know what Allstate will disclose

-6-

regarding its claim investigation and evaluation procedures, but they likely will request copies of the Allstate Claim Core Process Redesign materials generated through management consultant McKinsey and Co. that sought to increase Allstate profits by some $400 million annually by changing how Allstate processes first and third party claims such as this by, among other things, engaging in protracted delays that default to litigation in efforts to lower the "market value" of damages for certain injuries. Some of these CCPR documents were posted previously on Allstate's web site, but they were later removed. They had been ordered produced by various courts, including the State of Florida, which revoked Allstate's charter to sell insurance in that state until Allstate produced those documents. Allstate also values claims based on the Computer Sciences Corporation product called Colossus. The Colossus manual contains various categories providing what weight the insurer is to give to variables, such as the existence of a permanent impairment rating, or "duties under duress" so the plaintiffs will request copies of the Colossus manuals on how they are to be used, what was inputted in the Colossus valuation of the Carroll claims and what was conveyed to the insureds. The plaintiffs also will inquire concerning Allstate employee incentive compensation plans and criteria by which the claims handlers or supervisors become eligible for bonuses and merit pay increases.

These materials can be produced in CD Bate-stamped fashion or Adobe pdf format to limit paper reproductions. Counsel can discuss additional suggestions at the Scheduling Conference for ways to minimize inconvenience and cost while accommodating the parties' needs to request information reasonably calculated to discovery of admissible evidence.

*Parties shall adhere to Sedona principles regarding electronic discovery disputes.*

-7-

h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case: The plaintiffs are willing to engage in non-binding private mediation in advance of any additional discovery or even arbitrate the contractual claims and hold the extra-contractual claims in abeyance pending the arbitration. If the parties do pursue any of these alternatives, they will advise the magistrate judge pursuant to Fed. R. Civ. P. 26(f)(2).

## 7. CONSENT

Pursuant to D.C.COLO.LCivR 72.2, all full-time magistrate judges in the District of Colorado are specially designated under 28 U.S.C. § 636(c)(1) to conduct any or all proceedings in any jury or nonjury civil matter and to order the entry of judgment. Parties consenting to the exercise of jurisdiction by a magistrate judge must complete and file the court-approved Consent to the Exercise of Jurisdiction by a United States Magistrate Judge form. All parties do not consent to the exercise of jurisdiction by the magistrate judge.

## 8. DISCOVERY LIMITATIONS

The plaintiffs have not proposed limitations on discovery but do not anticipate the need to expand discovery beyond the presumptive limitations for depositions established in Fed. R. Civ. P. 30(a)(2)(A)(I) and 33(a)(I).

a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules: None. *[handwritten: 25 rogs per side, 10 depos per side, including experts]*

b. Limitations which any party proposes on the length of depositions: One day of seven hours.

c. Limitations which any party proposes on the number of requests for production and/or request for admission: Twenty-five. *[handwritten: rfps + 25 rfas per side.]*

d. Other Planning or Discovery Orders

No opposed discovery motions are to be filed with the Court until the parties comply with D.C.COLO.LCivR. 7.1A. If the parties are unable to reach agreement on a discovery issue after conferring, they shall arrange a telephone hearing with Magistrate Judge Mix regarding the issue. Both of these steps must be completed before any contested discovery motions are filed with the Court."

### 9. CASE PLAN AND SCHEDULE

a. Deadline for Joinder of Parties and Amendment of Pleadings: *April 20, 2012 for all issues except adding a claim for exemplary damages.* The plaintiffs anticipate seeking leave of court to include a prayer for exemplary damages to which the defendant is expected to resist. The defendant can successfully delay producing its internal claim investigation and evaluation materials and depositions of claims handlers for months so that the plaintiffs would not have sufficient information within the presumptive 45 day period within which to seek such relief. Except for amendment of pleadings to include prayers for exemplary damages, the plaintiffs suggest that April 20, 2012, be the deadline for joinder of parties and amendments of pleadings. *[Deadline to add claim for exemplary damages, July 31, 2012.]*

b. Discovery Cut-off: Dec. 15, 2012.

c. Dispositive Motion Deadline: Jan. 25, 2013.

d. Expert Witness Disclosures:

    1. The plaintiffs anticipate experts in the fields of orthopedics, physiatry, insurance claim practices, and economics. The defendant requests leave to call rebuttal experts in the fields of medicine, economics, accounting and insurance claim practices.

2. Limitations which the parties propose on the use or number of expert witnesses: The parties agree that they shall be limited to no more than 1 retained expert witness per field per party For example, if each plaintiff endorses an expert in the field of Orthopedics, the defendant would be entitled to endorse 2 different experts in the field of Orthopedics—one for each plaintiff, if it so chooses. 3. The parties with the burden of proof shall designate all affirmative experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before October. 1. 2012.

4. The parties ~~without any burden of proo~~f shall designate any rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before November 20, 2012. ~~The parties with the burden of proof shall disclose any rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before December 20, 2012.~~

e. Identification of Persons to Be Deposed:

The plaintiffs may depose the Allstate representative at trial or signatory to discovery responses, claim handlers, and experts. These depositions can be completed within the seven hour limitation.

The defendant may depose the plaintiffs, any of the plaintiffs' treating medical providers, any of the plaintiffs' experts and any witnesses pertaining to Mr. Carroll's employment and earnings.

f. Deadline for Interrogatories:

The parties will serve interrogatories to be answered no later than Nov. 15, 2012. This anticipates that all interrogatories will be served before Oct. 12, 2012.

g. Deadline for Requests for Production of Documents and/or Admissions

The parties will serve requests for production and/or requests for admission to be answered no later than Nov. 15, 2012. This anticipates that such discovery requests will be served before Oct. 12, 2012.

### 10. DATES FOR FURTHER CONFERENCES

To be scheduled by the Magistrate *Judge*.

a. An early neutral evaluation will be held on at *joint motion of the parties* o'clock __.m.

( ) Only attorneys need be present.

( ) Each party shall submit a Confidential Statement to the magistrate judge outlining the facts and issues, as well as the strengths and weaknesses of their case two weeks before the conference.

b. Status conferences will be held in this case at the following dates and times: *As needed*.

c. A final pretrial conference will be held in this case on *April 29*, ~~2012~~ *2013*, on at *9:30* o'clock *a*.m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

### 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement:

b. Anticipated length of trial and whether trial is to the court or jury: The plaintiff anticipates the jury trial can be completed within 5 days.

c. All pretrial proceedings may be more efficiently or economically conducted in the District Court's facilities at the downtown Denver facilities.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties. Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case. With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a pro se party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause or to prevent manifest injustice.

DATED this ~~27TH day of February~~ 5TH of March, 2012.

BY THE COURT:

_____
United States Magistrate Judge

-12-

APPROVED:

/s/ *signature*

Richard M. Kaudy, #12345

THE KAUDY LAW FIRM, LLC

1415 Larimer Street, Suite 300

Denver, CO 80202

rkaudy@kaudylaw.com

Phone: (303) 623-1885

Fax: (303) 623-1825

**Andrew A. Scott**

Andrew Scott, #33782

WALBERG, TUCKER &HOLMES, P.C.

Quebec Centre II, Suite 300

7400 East Caley Avenue

Centennial, CO 80111-6714

aas@wth-law.net

Phone: (303) 694-9300

Fax (303) 694-9370