IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00007-WJM-KLM

RICHARD CARROLL and
SHARON CARROLL,

        Plaintiffs,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

        Defendant.

---

## MOTION FOR SANCTIONS REGARDING PLAINTIFFS' PURPORTED EXPERT FYE, PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 30 AND 37

---

Defendant Allstate Fire and Casualty Insurance Company ("Allstate") hereby submits

this Motion for Sanctions Regarding Plaintiffs' Purported Expert Fye, Pursuant to Federal Rules

of Civil Procedure 30(d) and 37(c), based on deficient expert disclosures and abhorrent

deposition conduct.

### D.C.COLO.L.CIVR 7.1A CERTIFICATION

Counsel for the parties have conferred and Plaintiffs oppose the relief sought herein.

### INTRODUCTION

After providing patently insufficient disclosures, Plaintiffs' purported expert witness on

Colorado bad faith, Gary Fye ("Fye"), actively obstructed and frustrated Allstate's deposition of

him by repeatedly leveling *ad hominen* attacks against Allstate's counsel, and offering

argumentative and non-responsive answers throughout the deposition. Fye acted this way despite

an advisement from the Magistrate Judge at the beginning of his deposition to be cooperative and

avoid unnecessary animosity. This behavior is not an aberration. Fye has a long and disgraceful

record of abusive and cavalier disregard for the rules and conduct of civil litigation, so much so

that his conduct has been sanctioned. Fye here, as in a recent case for which he was sanctioned,

"turned the deposition on its head, wasted everyone's time, was unjustifiably upset about a non-

issue and basically succeeded in his effort to obstruct the proceeding." (**Exh. A**, Special Master

Report #6, *Faulkner v. Wausau Business Insurance*, 2:10-cv-01064-ROS, at 26 (D. Ariz. June 7,

2011).) (*See also* **Exh. B**, Motion to Exclude Testimony of Gary T. Fye, *Ip v. State Farm Ins.

Cos.*, 2003-CV-3026 (Denver Dist. Ct. Mar. 8, 2005).)

The prejudice caused by Fye's conduct is not limited to the more than $20,000 in costs

and fees incurred by Allstate in preparing for and taking this ultimately fruitless deposition. Fye

failed to disclose the basis for his opinions or the facts and data he considered in reaching them,

as required by Rule 26. Rather than make the required disclosures, Fye initially produced more

than 2,000 pages of documents that purportedly supported his opinion without any cross-

references to those opinions. Then, despite being served with a subpoena directing him to

produce the documents that specifically support his opinions, Fye produced 12,000 pages of

documents the day before his deposition. Fye's obstruction of his deposition then denied Allstate

the opportunity to discover what facts and data he purports support the opinions Plaintiffs intend

for him to offer in this case.

Fye has flouted his disclosure and deposition obligations in this case. Allstate therefore

respectfully requests that the Court exclude Fye from testifying at trial, and that the Court award

its attorneys' fees and costs related to the attempted deposition of Fye.

**FACTUAL BACKGROUND**

1.       This case arises from an automobile accident Plaintiffs had in November 2010

and Allstate's alleged delay in providing underinsured motorist benefits.

2.       Fye is frequently disclosed as an expert witness in insurance litigation. For years

he has proven to be a disruptive, difficult, and uncivil witness—regularly attacking opposing

counsel and undermining the orderly examination of his opinions. Fye routinely obstructs

opposing counsels' attempt to obtain meaningful answers to questions as "nitpicky attempt to

half-ass cross examination", and demeans counsel with epithets such as "chicken shit" and sexist

attacks that female attorneys are "talking too much", should "sit there and be silent", and snidely

asking "what have you done with the real attorneys?" (*See* **Exh. C**, an astonishing compilation of

deposition excerpts from other cases. *See also* **Exh. A** *passim*.)

3.       His egregious behavior has recently been sanctioned. Remarkably, Mr. Fye

behaved that way in the presence of a discovery referee. The Special Master concluded Fye "was

deliberately demeaning to the attorneys to frustrate and provoke them. In this way he could

accomplish a result that the questioning attorneys would be able to learn very little substantive

information from his deposition." (**Exh. A**, at 19.) And further, "A court should never put up

with this kind of conduct from a witness much less an expert witness." (*Id.* at 27.)

4.       Despite this admonition, Fye undertook the same approach in this case. In his

initial report, Fye offered a number of general opinions and broad invective, including that he

"found improper claim handling" in this case. (*See* **Exh. D**, Fye Sept. 28, 2012 Report, at 12.)

However, the vast majority of the report lacks citations or references to the facts and data he may

have considered in forming his opinions. His only attempt at citing support for his general

3

discussion of claims handling are vague references to "See foundational texts listed under Data

Considered, above." (*Id.*at 4, 6.) His findings specific to this case contain no citations or

references at all. (*Id.*at 12-13.) Under "Data & Information Considered," Fye identified only four

vague and gross categories: "Correspondence"; "Disclosures by Parties"; "Pleadings"; and

"Generally available literature on insurance and management, articles, tapes, and ads from

generally available sources," including 15 examples of such literature. (*Id*. at 2-3 (including

entire books).) Exhibit F to his report includes over 2,000 pages of documents, only a few of

which were actually referenced in his report, and many of which date from the 1990s, or earlier,

and bear no relation at all to this case. (*See* **Exh. E**, Index to Fye "Exhibit F".) In his disclosure

of his opinions regarding "The Richard and Sharon Carroll Claims" and his "Findings" Fye

identifies not a single document on which his opinion are based. (*See* **Exh. D**, at 10-13.)

      5.      On November 20, 2012, Plaintiffs disclosed a "supplemental" report for Fye. (*See*

**Exh. F**, Fye Nov. 20, 2012 Report.) Under "Data & Information Considered," Fye identified

only three new, specific sources of information: "Deposition of Gerald Palmer (6-7-12)";

"Examination Under Oath of Sharon Carroll (11-23-11)"; and "Examination Under Oath of

Richard Carroll (11-23-11)." (*Id.* at 1.) The supplemental report does not, however, reference

what, if anything, in the three sources purportedly provide a basis for Fye's opinions.

      6.      Fye's deposition was duly noticed for April 2, 2013. Well in advance of the

deposition, Allstate provided a subpoena duces tecum to Fye, directing that he produce his file

for the "specific case entitled *Carroll v. Allstate*." (*See* **Exh. G**, Mar. 20, 2013 Subpoena, at A-

2.) In particular, the subpoena directed him to produce the "documents that you specifically

relied upon in forming your opinions in the *Carroll v. Allstate* matter." (*Id.* (emphasis in

original).) Fye, unlike other experts in this case, refused to accept service, disingenuously and

vaguely stating that the subpoena contained "factual inaccuracies". (*See* **Exh. H**, Apr. 2, 2013

Fye Trans., 41:6-42:10.) Allstate accordingly had the subpoena served on him.

7. The day before the deposition, Fye made his "file" available. It consisted of over

12,000 pages of documents. Based on Allstate's review, many, if not most, of the documents

have nothing to do with Allstate's handling of Plaintiffs' claim in this case. In addition to the

irrelevant documents Plaintiffs produced, many documents in Fye's file post-date both of his

reports. (*See, e.g.,* **Exh. I**, example documents.)

8. Fye's deposition commenced the next day. From the outset, Fye was

uncooperative and argumentative, and engaged in delay tactics, so much so that only 20 minutes

into the deposition, Allstate's counsel phoned the Magistrate Judge, who specifically advised:

> I encourage you to try to put any history aside and focus on questions and answers
> in order to get through the deposition as efficiently as possible without
> unnecessary animosity, without wasting unnecessary time, and without eventually
> causing counsel to have to come back to the Court and ask for more time for the
> deposition because time is wasted on exchanges of the nature that Mr. Ridley just
> brought to my attention.

(**Exh. H**, 27:10-18.)

9. Fye ignored the Court's advisement and repeatedly offered non-responsive and

argumentative answers:

> Q. Have you ever seen a piece of correspondence from either Mr. Carroll or Mrs.
> Carroll responding to Mr. Palmer's offers to resolve their UIM claims?
>
> A. I have seen a response, yes.
>
> Q. By Mr. Carroll or Ms. Carroll?
>
> A. By Mr. Kaudy and Mr. Eddington.
>
> Q. I'm not, that wasn't the question.

A. SFXOL is a default to sue us or else. They got sued. That's a response . . . .

Q. I don't know of any [response to Mr. Palmer]. The, Mr. Palmer's letters went out to the Carrolls in early May, 2011.

A. So your question is just a -- I don't get to --

Q. I want to know what you know.

A. I don't get to say move to strike that question as being provocative, do I?

(**Exh. H**, at 153:18-154:1; 154:25-155-5.)

Fye took undue umbrage at every opportunity, accusing Allstate's counsel of altering the

transcript when he asked the court reporter to mark the record (*see id.* 71:12-73:12; 74:2-75:3),

becoming unduly hostile whenever possible:  "THE WITNESS: What, what in the hell is wrong

here?" (*id*. 157:5-6), and commenting on the phrasing of questions rather than providing

answers:

Q. So you don't know of any such written response by Sharon Carroll or Richard Carroll to Mr. Palmer's offer to settle and resolve their UIM claims?

A. To settle and resolve. That's an interesting way of stating that.

(*Id.*, 155:25-156:4.) Fye further avoided answering questions by badgering Allstate's counsel

with repeated accusations of "trickery":

A. What, what do you know? What are you hiding? What's the trick?

Q. You don't know --

A. Explain your trick now.

Q. You don't --

A. What is it?

(**Exh. H**, 156:21- 157:1; *see also* 215:22-25.[1] *See also* **Exh. J,** Video Excerpts of Fye Deposition

(submitted on disc by hand-delivery per ECF Civil Procedures).)

      10.     Fye repeated personal attacks against Allstate's counsel, accusing him of being

"disingenuous" and accusing him of "misleading" the Court and jury. For example:

> Q. Item D [items considered] says Recovery of Damages for Bad Faith,
> McCarthy. Is McCarthy the author of that publication?
>
> A. Do I get to point out the record of this complete waste of time that you're
> engaging in?
>
> Q. Let the judge decide that.
>
> RIDLEY: Mark the record.
>
> THE WITNESS: Yeah, we will. And I take back on what I said about I'm sure
> you're not trying to be disingenuous. Actually, insurance was invented before this
> claim occurred too. But go ahead . . . .
>
> Q. No, I, I'm just asking simple questions. I'm not trying to be disingenuous.
>
> A. That's simply not true. You're not asking simple questions, you're asking very
> broad questions with broad implications. And that's another way that you could
> deceive the jury and the Court, by suggesting that these are simple questions.
> They're not.

(**Exh. H**. 62:4-13, 71:2-8.)[2]

      11.     Moreover, Fye would not and did not provide the bases for his opinions or explain

the facts and data he considered in reaching his opinions. He testified that there was no method

to the documents he produced and that the documents came from a universe of "three to five

---

[1] Fye's improper behavior continued throughout the deposition. (*See e.g.* **Exh. H**, 15:19-16:9;
35:5-36:7; 45:19-46:5; 77:8-21; 80:1-81:16; 104:11-105:5; 107:6-20; 123:1-124:4; 125:4-127:4;
128:6-131:11; 144:17-145:7; 148:14-149:9; 153:24-154:11; 157:21-159:25; 162:7-24; 167:22-
169:21; 173:18-174:20; 181:14-184:4; 196:24-197:24; 199:24-200:12; 204:14-205:15; 209:7-
16.)
[2] (*See also id.* 54:21-55:17; 70:4-73:5; 76:24-77:3; 79:14-16; 80:16-17; 84:20-86:8; 113:17-22;
129:24-130:13; 160:13-161:17; 191:22-193:14; 194:6-20; 205:14-15; 215:22-216:23.)

million pages" that he claims relate to Plaintiffs' case. (*Id.* 48:24-49:24; 57:6-17.) When asked

about the specific correspondence that supported his reports, Fye responded that it would be

disingenuous to suggest that his report should identify that information. (*Id.* 79:9-16.)

12.     Allstate has incurred more than $20,000 in costs and fees in preparing for and

taking Fye's deposition, including attorneys' and paralegals' fees; copying and shipping Fye's

12,000 pages; Fye's own appearance fees; and travel costs.[3]

13.     Apparently conceding the utter lack of facts or data disclosed by Mr. Kaudy, ten

days after Fye's deposition, Plaintiffs served another supplemental disclosure in which Mr.

Kaudy identifies, on behalf of Mr. Fye, ten depositions, deposition exhibits, and expert

disclosures as "data and information considered." However, most of these new sources post-date

his two reports, making it impossible for him to have considered them in forming his opinions.

(*See* **Exh. K**, Supplemental Disclosure, Apr. 12, 2013, at 1-2.) Plaintiffs then "re-disclosed" the

April 12 disclosure as a rebuttal disclosure, even though, on its face, the supplemental disclosure

rebuts nothing. (*See* **Exh. L**, Supplemental Rebuttal Disclosure, Apr. 15, 2013.)

14.     Finally, it is worth noting that Fye's general opinion that Allstate engaged in bad

faith claims handling is redundant of Plaintiffs' other disclosed expert, Mr. Richard Laugesen,

whose disclosed reports are attached. (*See* **Exh. M**, Plaintiffs' Third Supplemental F.R.C.P.

26(a)(2) Disclosures.)

---

[3] The Court should award Allstate its costs associated with taking Fye's deposition. *See GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 185-86 (E.D. Pa. 2008) (imposing sanctions under Rule 30 on witness for "hostile, civil, and vulgar conduct"; "impeding, delaying, and frustrating fair examination"; and "failing to answer and providing intentionally evasive answers to deposition questions"); *see also Berry v. Ford Modeling Agency, Inc.*, No. 09–cv–8076, 2011 WL 3648574, at *4 (N.D. Ill. Aug. 18, 2011) (affirming monetary sanctions). Allstate will submit a detailed fee application when and as may be deemed appropriate by the Court.

### ARGUMENT

**I.      Fye's Abuse of the Discovery Process Should Be Sanctioned by Excluding His Opinions at Trial**

The disclosure requirements under Rule 26 are well-established: the expert report must

contain "a complete statement of all opinions the witness will express and the basis and reasons

for them" and "the facts or data considered by the witness in forming them." FRCP 26(a)(2)(B).

The Rule's disclosure requirements are "mandatory," and a "litigant who fails to comply with

these requirements does so at his own peril." *Cohlmia v. Ardent Health Services*, *LLC*, 254

F.R.D. 426, 429 (N.D. Okla. 2008) (quoting *Lohnes v. Level 3 Comm., Inc.*, 272 F.3d 49, 59 (1st

Cir. 2001)). Rule 37 provides that a failure to comply with Rule 26(a)'s disclosure requirements

may be sanctioned by not allowing a party "to use that information or witness to supply evidence

on a motion, at a hearing, or at a trial" and permitting additional sanctions, including "payment

of the reasonable expenses, including attorney's fees, caused by the failure[.]" FRCP 37(c)(1).

Similarly, Rule 30 embodies a requirement that a deponent act in good faith. Specifically,

Rule 30(d)(2) provides that the court "may impose an appropriate sanction—including the

reasonable expenses and attorney's fees incurred by any party—on a person who impedes,

delays, or frustrates the fair examination of the deponent." *See GMAC Bank*, 248 F.R.D. at 186

(imposing sanctions).

**A.      Fye's expert reports do not provide the basis for his opinions or disclose the facts or data he considered**

Neither of Fye's reports discloses the basis for, or the facts or data he considered in

forming, his opinions. Rather, they contain only vague references to general categories of

information and the "Exhibit F" attached to his initial report is replete with out-of-date and

irrelevant information having no bearing on the issues in this case. (*See* **Exh. N**, example

9

documents.) This generic disclosure falls well short of the obligation to "explain 'how' and 'why' the expert reached the opinions he or she intends to offer at trial." *Fiber Optic Design, Inc. v. New England Pottery, LLC*, 262 F.R.D. 586, 595 (D. Colo. 2009) (quotation omitted).

Unsubstantiated expert reports, like Fye's, fail Rule 26's disclosure requirements. In *Siburt v. U.S. Bank*, the court struck an expert report and testimony, finding the disclosure impermissibly deficient where, among other issues, the expert disclosed he had "reviewed 'various materials,'" which included "various transactions records" and "various account activity statements relative to [the] account." No. 10–C–135, 2011 WL 3687614, at *5 (E.D. Wis. Aug. 23, 2011). Fye's deficient disclosure of "Correspondence," "Disclosures by Parties," "Pleadings," and "Generally available literature on insurance and management, articles, tapes, and ads from generally available sources" (**Exh. D**, at 2-3), follow this same impermissible format. The *Siburt* court found in this circumstance that the expert had "not identified <u>specific facts or data considered</u> and his report is 'useless [to defendants] in preparing for cross-examination.'" 2011 WL 3687614, at *5 (emphasis added, quoting *Cohlmia*, 254 F.R.D. at 432). Similarly, the *Cohlmia* court struck the expert reports before it, where although "each expert announces what he will opine or expects to opine, there is no description of how he reached that opinion—what <u>specific data or information</u> he based the opinion on. This clearly does not meet the test of Rule 26." 254 F.R.D. at 432 (emphasis added).

Fye's deficient disclosure and absurdly voluminous production are far more egregious, and the general index he provided does not comply with the duty to disclose, as it contains no cross-reference to any of his opinions. In *Salgado v. Gen. Motors Corp.,* the Seventh Circuit upheld the district court's decision to bar the testimony of a witness at trial where his expert

10

report was deficient under Rule 26(a)(2)(B) because, among other flaws, it contained an index to the voluminous materials that the expert had reviewed, but "the index was not keyed to the various opinions that [the expert] had expressed." 150 F.3d 735, 738 (7th Cir. 1998).

**B.      Fye's 12,000 page document dump was improper and did not cure his failure to disclose the "facts or data" he considered**

Fye's last-minute document dump of more than 12,000 pages, which ignored the specific requests in the subpoena which he received 12 days before the deposition, did not and could not cure the failure to disclose the facts and data he considered. In *R.C. Olmstead, Inc. v. CU Interface, LLC*, the court found an expert failed to adequately disclose the facts and data he relied on where he simply "attached a voluminous 197-page attachment" to his report and "never once makes specific references in his report to which [documents] he is using to justify" his analysis. 657 F. Supp. 2d 905, 910-11 (N.D. Ohio 2008). As the court explained, the defendants were left "to trudge through 197 pages to find for themselves which page(s) support each of [the expert's] conclusions." *Id*. at 911. Here, Fye's document dump is 60 times as vast as that excluded in *Olmstead*.

In *Gerke v. Travelers Cas. Ins. Co. of America*, the court provided the rationale behind prohibiting such a document dump: "Unclear is how [the expert] obtained [the documents], the purpose for which he obtained them, and what bearing, if any, they had on his opinion in the case." No. 3:10–CV–1035–AC, 2013 WL 623304, at *6 (D. Or. Feb. 19, 2013). Here, Fye testified that the documents come from a universe of "probably three to five million pages of foundational claim practice documents," and that he produced "a miniscule portion of what [he] could produce." (*See* **Exh. H**, 57:6-59:14.) Thus, Fye's ridiculous production is both under- and over-inclusive. Where, as here, "conclusions in a report are based all or in part on facts not

11

disclosed in the report, the report does not comply with Rule 26(a)(2)(B)." *Olmstead*, 657 F.

Supp. 2d at 911.

> Fye also testified that there was no method to the documents he produced:

> Q: When you selected documents for copying, what was your method of this, in selecting those documents?

> A: There wasn't much method used. I had taken some depositions for reading while I was traveling, and so the, the file was out of the boxes and sitting in disarray on my, on a table, on my conference table, and I got a call on Good Friday, or the day before, that there was some urgency in getting you the documents. I put them in boxes the way they were stacked, they weren't in order, to help Sierra Document Management pick them up and get them copied.

> . . . And there were a few materials that, a couple of extra files that I found on the conference table that didn't get put in the original box, one of was my correspondence file. And so I knew you'd need that. So that got sent to Sierra Document Management when the first group got returned. So it was done in two stages.

> Now, what my methodology was, was just to get that stuff to the copy service as soon as possible, based on a sense of urgency that you were apparently communicating to Mr. Kaudy.

(**Exh. H**, 48:24-49:24.) Contrary to this haphazard approach, the subpoena to Fye directed

production of his "entire file for the specific case entitled *Carroll v. Allstate*" and the "documents

that [he] specifically relied upon in forming [his] opinions in" this case. (**Exh. G**, at A-2

(emphasis in original).) Instead, Fye delivered 12,000 pages of documents with no organization,

leaving Allstate's counsel to guess what among the thousands of pages he may or may not have

considered and to speculate as for which of his opinions any of the produced pages may have

been considered. As another district court has held: "Nothing causes greater prejudice than

having to guess how and why an adversarial expert reached his or her conclusion." *Reed v.*

*Binder*, 165 F.R.D. 424, 430 (D.N.J. 1996).

     **C.**       **Fye's abusive and obstructive deposition conduct prevented Allstate from meaningfully examining his opinions and the supporting bases**

Throughout his deposition Fye was uncooperative, argumentative, and belligerent; he offered non-responsive answers; he pontificated, and persisted in making *ad hominem* attacks against Allstate's counsel. He made a mockery of the question-and-answer deposition process. He did this despite being previously sanctioned, and despite the Magistrate Judge's early advisement to be cooperative, not waste time, and avoid personal attacks. (*See* **Exh. H**, 27:5-28:1.) This is consistent with Fye's deposition conduct generally. As the Special Master in *Faulkner* noted: "the clear intention of this very intelligent witness Mr. Fye was to frustrate the examiner, control the process and if possible ruin the purpose of the deposition"; he "should know better than to destroy the very purpose of the deposition, the legitimate discovery of what he will testify to a trial." (**Exh. A**, at 5-6.) Fye's repeated "evasive and dissimulative" responses to the majority of Allstate's questions during the deposition provide grounds to bar Fye from providing opinions at trial. *See Schmidt v. Ford Motor Co.*, 112 F.R.D. 216, 221 (D. Colo. 1986).

Further exacerbating Fye's usual conduct, Plaintiffs' counsel—who has previously retained Fye and is familiar with his obstructionist and disruptive behavior—apparently instructed Fye to be "aggressive" regarding at least some of his testimony (*see* **Exh. H**, 106:13-18), and did little during the deposition to intercede or restrain Fye's behavior. *See Heriaud v. Ryder Transportation Services*, No. 03 C 0289, 2005 WL 2230199, at *9 (N.D. Ill. Sept. 8, 2005) (barring party's expert from testifying at trial where attorney's conduct at deposition was "unprofessional, obstreperous, and obstructive," and "his witness followed his lead and similarly impeded the discovery process").

Setting aside Fye's bad behavior, and assuming *arguendo* that deposition testimony can cure a disclosure failure, *see contra Scholl v. Pateder*, No. 1:09–cv–02959–PAB–KLM, 2011 WL 3684779, at *3 (D. Colo. Aug. 22, 2011) (deposition is not a substitute for proper disclosures), Fye still could not provide the facts and data supporting his opinions. When asked, he could not cogently explain the sourcing of documents (*see* **Exh. H**, 139:9-141:5), and he would not (or could not) identify on which documents he specifically relied. (*See id.*, 79:9-81:10; 122:13-25.) Fye both indicated that he could have produced more documents that relate to the case (*id.* 59:9-14), and that many of the documents do not specifically relate, if at all, to this case. (*See id.*, 40:14-17; 52:23-53:20; 56:9-59:14; 60:15-23.) Fye's deposition testimony confirmed what is apparent from his reports: his utter failure to comply with Rule 26(a)(2)'s disclosure requirements.

Fye's failure to disclose and obstruction of his deposition have prejudiced Allstate's ability to defend this case. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) ("[T]o avoid prejudice [the party] needed to know the substance of the experts' testimony."). Exclusion of Fye is the appropriate remedy under these circumstances, especially considering that Plaintiffs have disclosed another expert witness—Richard Laugesen—to opine on Allstate's handling of Plaintiffs' claim. (*See* **Exh. M**, at 2.)

**II.    Should Fye Be Permitted to Testify, His Testimony Should Be Strictly Limited to the Opinions Offered In His Expert Reports**

Although an expert's testimony is limited to the opinions contained in his or her report, *see, e.g.*, *Access for the Disabled, Inc. v. T.S. Margate Co., Ltd.*, No. 08-60483-CIV, 2008 WL 2761284, at *1 (S.D. Fla. July 15, 2008), Fye appears to believe he may augment his opinions at any time. First, Plaintiffs' most recent "disclosure" includes depositions that occurred <u>after</u> Fye

14

submitted his reports and after his deposition. (*See* **Exh. K**, at 1-2.) He clearly could not have considered that information in his prior reports, and he has not provided a timely supplement to his opinions. Second, Fye testified that it is a "dynamic file that [he] keeps," and that he continues adding to it. (**Exh. H**, 48:21.) Thus, Allstate has no way to know what existing documents Fye considered, or whether he will subsequently consider "new" documents. Finally, Fye has repeatedly disregarded the discovery and disclosure rules. Fye's conduct demonstrates that reopening his deposition would be a waste of time and resources. (*See* **Exh. A**, at 4 (finding Fye engaged in "obstructionist and inappropriate behavior" despite the presence of a discovery referee).)

Allstate has a substantial concern that, if Fye testifies, he may improperly attempt to opine on new matters. Allstate respectfully requests that, to the extent Fye is permitted to testify at all, the Court strictly limit any testimony to the specific opinions offered in his two reports to avoid unfair surprise and prejudice at trial.

## CONCLUSION

For the reasons above, Allstate respectfully requests that the Court completely exclude Fye's opinions. Only in the alternative, the Court should strictly limit his testimony to the specific opinions and purported bases disclosed in his two reports, and exclude the untimely supplemental disclosures. In addition, Allstate requests an award of costs and attorneys' fees pursuant to Rule 30 based on Fye's conduct in obstructing and frustrating his deposition and leave to submit a fee application at such time as the Court deems appropriate, along with such other and further relief as this Court deems proper.

Dated: April 22, 2013

Respectfully submitted,

*s/ Terence M. Ridley*

Terence M. Ridley
Evan B. Stephenson
Matthew R. Stevens
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647
Tel: (303) 244-1800
Fax: (303) 244-1879
E-mail: ridley@wtotrial.com
       stephenson@wtotrial.com
       stevens@wtotrial.com

Attorneys for Defendant Allstate Fire and Casualty
Insurance Company

16

<u>**CERTIFICATE OF SERVICE (CM/ECF)**</u>

I hereby certify that on April 22, 2013 I electronically filed the foregoing **MOTION FOR SANCTIONS REGARDING PLAINTIFFS' PURPORTED EXPERT FYE, PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 30 AND 37** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Richard L. Eddington**
  rickeddington@aol.com, chelsea@cantafiolaw.com, charity@cantafiolaw.com, krista@cantafiolaw.com

- **Richard Michael Kaudy**
  rkaudy@kaudylaw.com, alh@kaudylaw.com, thansen@kaudylaw.com

- **Terence M. Ridley**
  ridley@wtotrial.com, norris@wtotrial.com

- **Andrew Alan Scott**
  ascott@wsteele.com, pokonski@wsteele.com

- **Evan Bennett Stephenson**
  stephenson@wtotrial.com, tjenkins@wtotrial.com

- **Matthew Robert Stevens**
  stevens@wtotrial.com, keitlen@wtotrial.com

I further certify that a CD containing Exhibit J (excerpts of videotaped deposition of Gary Fye) was served via FedEx to the following:

Richard L. Eddington, Esq.
Law Offices of Ralph A. Cantafio, P.C.
345 Lincoln Avenue, Suite 202
Steamboat Springs, CO 80487

Richard Michael Kaudy, Esq.
Richard M. Kaudy, Esq.
The Kaudy Law Firm, LLC
333 W. Hampden Avenue, Suite 850
Englewood, CO 80110

17

Andrew Scott, Esq.
White and Steele
600 17th Street, Suite 600N
Denver, CO 80202


*s/ Terence M. Ridley*

Terence M. Ridley
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647
Tel: (303) 244-1800
Fax: (303) 244-1879
E-mail: ridley@wtotrial.com

Attorney for Defendant Allstate Fire and Casualty
Insurance Company