IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00007-WJM-KLM

RICHARD CARROLL, and
SHARON CARROLL,

      Plaintiffs,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

      Defendant.

_____

## ORDER

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant's **Motion for Sanctions Regarding Plaintiffs' Purported Expert Fye, Pursuant to Federal Rules of Civil Procedure 30 and 37** [#57][1] (the "Motion").  On June 5, 2013, Plaintiffs filed a Response [#78].  On June 24, 2013, Defendant filed a Reply [#87].  The Motion is referred to this Court for disposition [#58].  The Court has reviewed the Motion, the Response, the Reply, the exhibits, the entire case file, and the applicable law, and is fully advised in the premises.  For the reasons set forth below, the Motion [#57] is **GRANTED in part** and **DENIED in part**.

### I. Background

      This action arose from a motor vehicle collision between two vehicles on September 24, 2010 near Spanish Fork, Utah.  *Sched. Order (Undisputed Facts)* [#7] at § 4.  Plaintiffs

_____

[1]  "[#57]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Order.

1

Richard and Sharon Carroll were in one vehicle, Richard as the driver and Sharon as the passenger, and Hector Guillen ("Guillen") was in the second vehicle. *Id.* The collision was a result of Mr. Guillen's negligence. *Id.* Mr. Guillen and Plaintiffs were both insured by Defendant. *Id.* Plaintiffs assert that they settled their third-party claims against Mr. Guillen for the policy limits. *Compl.* [#2] at 2-3. In this action, Plaintiffs are seeking payment of their underinsured motorist benefits from Defendant. *Id.* at 3. Plaintiffs allege that Defendant's failure to pay Plaintiffs their covered benefits is a breach of the insurance contract, *id.* at 4, and the covenant of good faith and fair dealing. *Id.* at 5.

The parties have exchanged expert disclosures and taken the experts' depositions. Plaintiffs designated Gary Fye ("Fye") as an expert in claims practices. Specifically, in their third supplemental expert disclosure [#57-13], Plaintiffs state the following regarding Mr. Fye:

> [Mr. Fye] is a previously retained expert and is expected to testify as previously summarized and disclosed in his two reports and deposition testimony if obtained. Copies of Mr. Fye's reports, Curriculum Vitae, fee Schedule and list of testimony in other cases have been previously provided. He is expected to testify that [Defendant] did not comply with national insurance industry claim-handling standards, deviated from those standards, withheld benefits from the insureds knowing that the insureds' damages exceeded the minimum liability coverage of tortfeasor Hector Guillen, intentionally refused to explain its internal claims decisions to the insureds despite their repeated requests for this information, that [Defendant] decided not to explain to its insureds how [Defendant] processed their claims so the insureds would not be informed of why [Defendant] was delaying and denying payment of any covered benefits and articulated no reasonable bases for not providing its insureds with any of their covered benefits.

*Plaintiffs['] Third Supplemental F.R.C.P. 26(a)(2) Expert Disclosures* [#7-13] at 1-2. As a retained expert, Mr. Fye drafted an expert report and two supplements to that report which were disclosed to Defendant: a September 28, 2012 report [##57-4, 78-2] (the "September

Report"), a November 20, 2012 supplemental disclosure [##57-61 78-7] (the "November Supplement"), and an April 12, 2013 supplemental disclosure [#57-11] (the "April Supplement").

In the September Report, Mr. Fye lists the following "data and information considered" when reaching his conclusions: "[c]orrespondence," "[d]isclosures by [p]arties, [p]leadings, and "[g]enerally available literature on insurance and management, articles, tapes, and ads from generally available sources." *September Report* [#57-4] at 2.  Mr. Fye then lists "examples" of the generally available literature he considered.  *Id.* at 2-3.  The September Report attached several exhibits, one of which is referred to as "Enclosure F" throughout the September Report.  "Enclosure F" was attached to the September Report as "Exhibit F" and is an index of a production of documents.  *See Motion, Ex. E* [#57-5] at 1-16; *Response, Ex. 2* [#78-2] at 40-56.  This index lists a variety of prior cases, transcripts from other cases, articles, annual reports, and other documents dating from the 1980s through November 2009.  Nothing on the index indicates that any of these documents are directly related to Plaintiffs' insurance policy, their accident, their claims, or the instant litigation.[2]  According to Plaintiffs, Exhibit F "indicate[s] what materials [Mr. Fye] reviewed and relied upon." *Response* [#78] at 4.  The November Supplement adds three items to the information considered by Mr. Fye: (1) the deposition of Gerald Palmer, (2) the deposition of Sharon Carroll, and (3) the deposition of Richard Carroll.  *November*

---

[2] Defendants provided some examples of the documents listed in the index.  One document is a "Progress Development Summary" dating from 1988 with the employee's name redacted. *Motion, Ex. N* [#57-14] at 1.  Another document is an information bulletin from Florida's Department of Insurance and Treasurer dated December 31, 1984.  *Id.* at 3.  One article included in the documents is a November 1, 1996 Wall Street Journal article titled "Allstate Tries a New Number in Germany" that discussed Allstate's expansion into Germany.  *Id.* at 6.

*Supplement* [#57-6] at 1.  The April Supplement adds other depositions taken in this case, "[d]eposition [e]xhibits," "[e]xpert [d]isclosures," the report of Dr. Stanley Ginsburg, and the report of Plaintiffs' other expert, Dick Laugeson.  *April Supplement* [#57-11] at 1-2.

On April 2, 2013, Mr. Fye was deposed in this case.  The full deposition transcript was provided to the Court by Defendant in support of the instant Motion [#57-8], along with a DVD of portions of the deposition [#59].

In the Motion, Defendant asks the Court to sanction Plaintiffs pursuant to Fed. R. Civ. P. 30 and 37 "based on deficient expert disclosures and abhorrent deposition conduct." *Motion* [#57] at 1.  Specifically, Defendant argues that Mr. Fye should be prohibited from testifying as part of Plaintiffs' case as a sanction pursuant to Fed. R. Civ. P. 37 because he failed to provide "'a complete statement of all opinions [he] will express and the basis and reasons for them' and 'the facts or data considered by [him] in forming them'" as required by Fed. R. Civ. P. 26(a)(2)(B).  *Motion* [#57] at 9 (quoting Fed. R. Civ. P. 26(a)(2)(B)).  Defendant argues that Mr. Fye's expert report and the related supplements do not "disclose the basis for, or the facts or data he considered in forming[ ] his opinions. Rather, they contain only vague references to general categories of information and the 'Exhibit F' attached to his initial report is replete with out-of-date and irrelevant information having no bearing on the issues in this case." *Motion* [#57] at 9.  Defendant further argues that Fye's production of more than 12,000 pages does not meet Rule 26(a)(2)(B)'s requirements.  *Id.* at 11-12.  In addition, Defendant maintains that Fye's conduct at his deposition was argumentative, belligerent, included ad hominem attacks against Defendant's counsel, was generally disruptive, and prevented Defendant from meaningfully examining him.  *Id.* at 13-14.  Defendant further argues that even at his deposition, Mr. Fye

4

"still could not provide the facts and data supporting his opinions . . . and he would not (or could not) identify on which documents he specifically relied" in forming the expert opinions he is offering in this case. *Id.* at 14.  As a result, Defendant asks the Court to exclude Mr. Fye and states that Plaintiffs will not be prejudiced by his exclusion because "Plaintiffs have disclosed another expert witness—Richard Laugeson—to opine on Allstate's handling of Plaintiffs' claims." *Id.*  Finally, Defendant argues that if Mr. Fye is permitted to testify, his testimony should be strictly limited to the opinions offered in his September Report and November Supplement. *Id.* at 14-15.  Defendant argues that the April Supplement was submitted after his deposition, was not timely disclosed, and could not have formed the basis for any of his expert opinions. *Id.* at 15.  In addition, Defendant requests costs and attorneys' fees pursuant to Fed. R. Civ. P. 30. *Id.* at 8 n.3, 15.

In their Response, Plaintiffs offer arguments regarding Fed. R. Evid. 701 and 702 and *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579 (1993).[3]  *Response* [#78] at 3.  Plaintiffs further argue that "[t]he Fye disclosures and attachments comply with Rule 26.  His analysis, review and research into organizational claim-handling methods by [Defendant], explain how [Defendant] redesigned its claims processing to increase profits for stockholders at the expense of injured policyholders." *Id.* at 4.  Plaintiffs also take the position that Exhibit F to the September Report "indicate[s] what materials [Mr. Fye] reviewed and relied upon." *Id.*  According to Plaintiffs, Mr. Fye "relied in general on all of this information . . . ." *Id.*  Regarding the data and information that underlies Mr. Fye's

---

[3]  The Court notes that Plaintiff's Response generally fails to address the arguments raised in the Motion.  For example, Plaintiffs offer information about Mr. Fye's testimony in other cases. *Response* [#78] at 4-5.  Plaintiffs also make statements about the inadmissibility of settlement negotiations. *Id.* at 6-7.

expert opinion, Plaintiffs maintain that Defendant "*never asked him* what facts or data support this opinion." *Id.* at 9 (emphasis in original). Plaintiffs state that Defendant "claims it has to guess at what Fye relied on when it only had to ask." *Id.* at 10. Regarding Defendant's request that if Mr. Fye is allowed to testify, his testimony be limited strictly to the opinions offered in his September Report and the November Supplement, Plaintiffs state that they agree and that "all experts should be so limited." *Id.* at 12. This seems to indicate that Plaintiffs misunderstand Defendant's position. However, Plaintiffs also noted that Defendant "now demands that [Mr.] Fye's timely supplemental reports should be stricken because later disclosures explained what additional materials he had reviewed and relied upon that did not alter his previous opinions." Accordingly, it is unclear to the Court what position Plaintiffs take with regard to Defendant's request that the April Supplement be stricken as untimely. Finally, with regard to Mr. Fye's deposition conduct, Plaintiffs argue that "[s]anctioning the clients for conduct of their expert unfairly harms them particularly when the transcript reveals [that Defendant] squander[ed] time questioning the witness concerning which high school he attended and graduated from." *Id.* at 12. Plaintiffs also maintain that Mr. Fye "was admonished to be 'aggressive' to say nothing concerning Colossus," a computer system relating to insurance claims, because "[c]ounsel stipulated two months ago that evidence regarding Colossus would not be admissible or discoverable . . . ." *Id.* at 5. Plaintiffs also argue that Mr. "Fye never engaged in vulgar expletive-laced language, which justified sanctions in other reported cases, nor dodged questions; instead he sought to clarify the issues to the consternation of" Defendant. *Id.* at 13.

        In its Reply, Defendant maintains that in their Response, "Plaintiffs have ignored the case law cited in the Motion . . . regarding the scope and specificity of the disclosures

required of an expert witness and, instead, merely cite inapplicable Federal Rules of Evidence and the general *Daubert . . .* line of cases." *Reply* [#87] at 3.  Defendant then revisits the legal arguments it offered in the Motion pursuant to Fed. R. Civ. P. 26.  *Id.* at 3-8.  Defendant also maintains that Mr. Fye's failure to specify the facts and data he relied on to form his expert opinions has prejudiced Defendant.  *Id.* at 8-9.  Finally, Defendant argues that Mr. Fye's expert opinions are either irrelevant to the instant action or redundant of the opinions offered by another of Plaintiffs' experts, Mr. Laugesen.  *Id.* at 10.  In its conclusion, Defendant renews its request for costs and attorneys' fees pursuant to  Fed. R. Civ. P. 30.  *Id.*

## II.  Analysis

As an initial matter, the Court notes that Defendant brings its Motion pursuant to Fed. R. Civ. P. 26, 30, and 37.  Rule 26 addresses only the sufficiency of the disclosures made by Plaintiff. The Court's analysis of Plaintiffs' compliance with Rule 26(a)(2) does not resolve whether Mr. Fye is qualified to testify as an expert witness pursuant to Fed. R. Evid. 702 or whether his testimony is admissible at trial.  In fact, Defendant makes clear in its Reply that it is not requesting relief pursuant to Fed. R. Evid. 702 or *Daubert* and will address such relief, if needed, in a separate motion.  *See Reply* [#87] at 3 n.3.

### A.    Request for Sanctions Relating to Failure to Disclose

#### 1.    Fed. R. Civ. P. 26

"Fed. R. Civ. P. 26(a)(2)(B)(i) requires the disclosure of an expert's report, which must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." *Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 80 (10th

Cir. 2011) (internal quotation omitted).  While Fed. R. Civ. P. 26(a)(2)(d) governs the timing of expert report disclosures, Rule 37(c)(1) provides that failure to comply with Rule 26(a) precludes use of the expert information at issue "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997); *e.g., Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002) ("Rule 37(c) permits a district court to refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless.").  "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999) (quoting *Mid-Am. Tablewares, Inc. v. Moqi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)).  "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose."  *Id.* (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)).  However, the Tenth Circuit has enumerated four factors the Court should use to guide its discretion in determining whether a Fed. R. Civ. P. 26(a) violation is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Id.* (citations omitted). The non-moving party has the burden of showing that it was substantially justified in failing to comply with Fed. R. Civ. P. 26(a) and that such failure was harmless.  *See Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004) (citation omitted).  In analyzing these factors, the Court notes that the Tenth Circuit has stated that "the decision to exclude evidence is

8

a drastic sanction." *Summers*, 132 F.3d at 604.

### 2.    Fed. R. Civ. P. 37(c)

Pursuant to Fed. R. Civ. P. 37(c)(1), violation of Fed. R. Civ. P. 26(a) or 26(e) may provide grounds for sanctions, at the discretion of the Court.  Such sanctions may include "payment of the reasonable expenses, including attorney's fees, caused by the failure" to identify information as required by Rule 26(a) or (e).  Fed. R. Civ. P. 37(c)(1)(A).  In considering what sanctions to impose, the Court must bear in mind the rationale and purposes to be served by sanctions, including: (1) deterring future litigation abuse; (2) punishing present litigation abuse; (3) compensating victims of litigation abuse; and (4) streamlining court dockets and facilitating case management.  *See Hirpa v. IHC Hosps., Inc.*, 50 F. App'x 928, 932 (10th Cir. 2002) (citing *Woodworker's Supply, Inc.*, 170 F.3d at 993); *White v. Gen. Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990).[4]  Rule 37 sanctions "must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent."  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)).  "Where preclusion of the undisclosed evidence is not a proper sanction, the appropriate alternative sanction should be in keeping with the significance of the violation."  *Trattler v. Citron*, 182 P.3d 674, 683 (Colo. 2008).

"The sanctions available under Rule 37(c) are often described as 'self executing' and 'automatic.'"  *Adams*, 2013 WL 2444696, at *2 (citing Steven S. Gensler, Federal Rules of

---

[4] Although *White* involved sanctions under Rule 11, its principles and policy interests apply equally to sanctions under Rules 26 and 37.

Civil Procedure, Rules and Commentary Rule 37 (2012)).  However, in addressing Rule 37 generally, the Tenth Circuit has made clear that "[t]he protections and sanctions found in the discovery rules are not absolute and contemplate the use of judicial discretion." *Marshall v. Ford Motor Co.*, 446 F.2d 712, 713 (10th Cir. 1971); *see also Woodworker's Supply*, 170 F.3d at 993 (recognizing that Rule 37(c) vests broad discretion with the trial court); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting that the district court's discretion should be given particularly wide latitude in imposing sanctions under Rule 37(c)(1)); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001) (holding that district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations). Therefore, although Rule 37(c) refers to Rule 37(b)(2)(A)(I)-(v), which provides a list of potential options for a court's consideration in fashioning an appropriate sanction, the determination of an appropriate sanction is left to the sound discretion of the court, limited only by the requirements that the sanction be "just," and "related to the particular claim" at issue.  *See Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996); *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992).

### 3.    Application

Rule 26 requires disclosure of an expert report for each retained expert that includes "all opinions to be expressed and the basis and reasons therefor" as well as "[t]he data and information considered by the expert . . . ."  Fed. R. Civ. P. 26(a)(2)(B).

In order to satisfy Rule 26, a retained expert's written report "should explain 'how' and 'why' the expert reached the opinions he or she intends to offer at trial."  *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, 262 F.R.D. 586, 595 (D. Colo. 2009).  An

10

expert report must be "detailed and complete." *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) (quoting Fed. R. Civ. P. 26 advisory notes); *Cohlmia v. Ardent Health Serv., LLC*, 254 F.R.D. 426, 2008 WL 3992148 at *2 (N.D. Okl. 2008) (the expert must prepare a "detailed and complete written report stating the testimony the witness is expected to present during direct examination, *together with the reasons therefor*").  Rule 26's disclosure requirements are designed to allow the opposing party to properly prepare to respond to the opinion of the disclosed expert to the extent that opposing counsel should not need to depose the expert to understand the opinions he or she offers or the basis for those opinions.  *See Salgado by Salgado*, 150 F.3d at 741 n.6 ("The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." ); *Cappel v. SBC-Ameritech*, 2007 WL 2076028 at *1 (N.D. Ill. 2007) (expert reports "must be 'detailed and complete' so that 'opposing counsel is not forced to depose an expert in order to avoid ambush at trial.'"); *Sharpe v. United States of America*, 230 F.R.D. 452, 458 (E.D. Va. 2005) ("expert's report must be 'detailed and complete' in order to 'avoid the disclosure of sketchy and vague expert information;'"); *Lava Trading Inc. v. Hartford Fire Ins. Co.*, 2005 WL 4684238 at *7 (S.D.N.Y. 2005) (an expert's report must contain the "essential details needed to understand and assess" the expert's conclusions). Therefore, an expert report that fails to provide the basis and reasons for the expert's opinions fails to meet Rule 26's requirements.  *Hilt v. SFC Inc.*, 170 F.R.D. 182, 185 (D. Kan. 1997) ("The report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinion.  It must explain why and how the witness

reached them."); *Reed v. Binder*, 165 F.R.D. 424, 428 n.6 (D.N.J. 1996) (an expert report should indicate "'what' the expert saw, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be expressed").  In short, Rule 26 is designed to eliminate unfair surprise to the opposing party and to conserve resources. *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995), *cert. denied*, 516 U.S. 822 (1995); *Reed*, 165 F.R.D. at 429.  Ultimately, "[t]he test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced."  *Reed*, 165 F.R.D. at 429.

Here, the dispute is primarily about what information Mr. Fye relied on when forming his expert opinions.  Mr. Fye's September Report contains a section titled "data & information considered" that includes four categories of information: (1) correspondence, (2) disclosures by parties, (3) pleadings, and (4) generally available literature on insurance and management, articles, tapes, and ads from generally available sources.  *September Report* [#57-4] at 2-3.  The first three categories provide no further detail.  While it may seem safe to assume that "pleadings" must mean pleadings filed in this case (as "pleadings" are defined in Fed. R. Civ. P. 7), such an assumption is incorrect.  Mr. Fye's document production and his index of those documents includes pleadings and filings from other cases as well as summaries of depositions taken in other cases.  *See, e.g., Motion, Ex. E* [#57-5] at 2 ("*Lowe v. Allstate* Complaint"); 4 ("Affidavit of Sharon Parker-Harris (3/18/98) re: McKinsey & Co."); 7 ("Gould v. Allstate Complaint Excerpt (Exempt from arbitration amount in excess of $25,000)"); 8 ("Mary E. Carter Deposition Summary (*Mulready v. Allstate*, 1/25/00)"); 14 ("*Simonsen v. Allstate* Order (7/28/03)"); 15 ("*Parks v.*

*Allstate* Order Granting Plaintiffs' Motion to Compel, re: McKinsey documents"). Further, My. Fye's document production also includes correspondence that does not appear to relate to the instant action in any way. *See, e.g., id.* at 3 ("SIU Memo (4/7/97)"); 6 ("Choate letter to Insureds ("you are really buying claim service")"); 11 ("Deb Campbell and Jeff Lewis memo to Allstate Officers re: New Business Model Update #2 (9/11/00)"). The fourth category of documents includes a list of "examples" which appear to be books or articles. *September Report* [#57-4] at 2-3. Further, despite listing many books and articles in the "data & information considered" section of the September Report, throughout the opinion portion of his report, Mr. Fye refers to only one text contained in the list, Best's Key Rating Guides, *id.* at 3, and four times includes a general reference to "foundational texts listed under Data Considered, above," *id.* at 4, 6. Further, at no point in his September Report does My. Fye cite to or refer to any correspondence, pleading, filing, or other document that specifically relates to the instant litigation.

Mr. Fye's November Supplement includes three depositions from this case in the list of items he considered and also adds additional commentary in his report. One such section includes a parenthetical reference stating "(See Data Considered above)". *November Supplement* [#57-6] at 3. Otherwise, like the September Report, the November Supplement fails to specifically point to any underlying information on which My. Fye's opinions are based.[5]

Finally, Mr Fye's April Supplement adds deposition transcripts and expert reports

---

[5] In addition, the Court notes that at least some of Mr. Fye's newly added opinions are legal conclusions. *See, e.g., id.* at 6 ("When Allstate is asked to perform under its policy and does not do so without a reasonable basis, the company is subject to extracontractual damages . . . .").

from this case as part of the information he considered in reaching his conclusions, but does not otherwise offer any new opinions nor amend his existing opinions. *See generally April Supplement* [#57-11]. In addition, as Defendant notes, this document was disclosed after Mr. Fye's deposition in this case.

The Court finds that Mr. Fye's disclosures fail to meet the requirements of Rule 26 because they do not disclose the "data and information considered by the expert," Fed. R. Civ. P. 26(a)(2)(B), in a way that "explain[s] 'how' and 'why' the expert reached the opinions he or she intends to offer at trial." *Fiber Optic Designs, Inc.*, 262 F.R.D. at 595. While Plaintiffs argue that the documents listed in "Exhibit F" to Mr. Fye's September Report "indicate what materials he[ ] reviewed and relied upon. . . . [and that Mr.] Fye testified that he relied in general on all of this information," *Response* [#78] at 4, Exhibit F's list of documents do not meet the requirements of Rule 26. As noted above, "[t]he report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinion. It must explain why and how the witness reached them." *Hilt*, 170 F.R.D. at 185. Mr. Fye's September Report and the related supplements fail to explain how Mr. Fye reached his opinions in this case. His production of documents and the related index does not clarify the rationale or thought process involved in reaching his proffered opinions.

As noted above, Rule 26(a) precludes the use of the expert information at issue "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Summers*, 132 F.3d at 604. "This exclusionary sanction is mandatory unless the failure to disclose was substantially justified or harmless or unless the Court finds some other sanctions to be more appropriate." *Two Moms and a Toy, LLC*

14

*v. Int'l Playthings*, LLC, No. 10-cv-02271-PAB-BNB, 2012 WL 5187757, at *3 (D. Colo. Oct. 19, 2012).  "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose."  *Id.* (citing *$9,041,598.68*, 163 F.3d at 252).  However, the Tenth Circuit has enumerated four factors the Court should use to guide its discretion in determining whether a Fed. R. Civ. P. 26(a) violation is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Woodworker's Supply*, 170 F.3d at 993 (citations omitted).  Further, the non-moving party has the burden of showing that it was substantially justified in failing to comply with Fed. R. Civ. P. 26(a) and that such failure was harmless.  *See Sender*, 225 F.R.D. at 655.  Here, Plaintiffs fail to argue that their failure to comply with Rule 26 was substantially justified or harmless. Plaintiffs' failure to offer any argument that their failure was substantially justified or harmless is a sufficient basis for the Court to find that their failure to comply with Rule 26 was <u>not</u> substantially justified or harmless.  *See, e.g., Two Moms and a Toy, LLC*, 2012 WL 5187757, at *3 n.4; *Gallardo v. United States*, No. 10-cv-00868-PAB-CBS, 2012 WL 1191864, at *4-5 (D. Colo. April 10, 2012).  However, in the interest of providing a complete analysis, the Court will briefly address the *Woodworker's Supply* factors.

Defendant argues that Plaintiffs' failure to comply with Rule 26's requirements has prejudiced it and was not harmless.  *Reply* [#87] at 8-9.  Specifically, Defendant implies through citation to case law that it cannot effectively cross-examine this expert without knowing the basis of his opinions.  *Id.*  Defendant also states that Mr. "Fye's failure to

disclose and obstruction of his deposition have prejudiced [Defendant]'s ability to defend this case." *Motion* [#57] at 14. With regard to the first factor, it would be prejudicial to Defendant to have to cross-examine and offer counter opinions to expert opinions for which it does not know the basis or factual underpinnings. There can be no question that a party cannot properly respond to an expert opinion when it does not know what data or information the expert considered when reaching his conclusions.

Regarding the second factor, "[a] Rule 26 violation may be harmless if it can be cured by further discovery." *Alexander v. Archuleta Cnty, Colo.*, No. 08-cv-00912-CMA-KLM, 2010 WL 363390 at *3 (D. Colo. Jan. 27, 2010) (citing *Woodworker's Supply*, 170 F.3d at 993). However, based on the transcript of Mr. Fye's deposition, the briefing relating to the instant Motion, and the parties' behavior throughout this litigation, the Court finds that "any prejudice to Defendant[ ] cannot be rectified by further discovery." *Id.* Further, discovery is closed and the Final Pretrial Conference is scheduled for April 1, 2014. Accordingly, it does not appear that Plaintiffs can cure the prejudice because at this time they cannot take steps sufficient to allow Defendant to properly prepare for Mr. Fye's trial testimony. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 854 (10th Cir. 2002), *cert. denied*, 537 U.S. 1066 (2002) (finding that party could not cure the potential prejudice because despite proffered remedies, plaintiff "still would not know what testimony the defendants' expert would give at trial."); *Hermann v. Hartford Cas. Ins. Co.*, No. 11-cv-03188-REB-MEH, 2012 WL 5569769, at *4 (D. Colo. Nov. 15, 2012) (finding that the parties' ability to cure was limited because of the schedule set in the case). Finally, assuming arguendo that Plaintiffs had argued that Defendant could turn to the voluminous documents produced relating to My. Fye's expert opinion and the books and articles listed

in his September Report, such an argument would fail.  As Defendant notes, during his deposition Mr. Fye admitted that many of the documents and books he claims to have relied on when forming his opinions do not specifically relate to this case.  *Motion, Ex. H* [#57-8] ("Fye Transcript") at 40:14-17 ("Q: Were those books specifically relied upon by you in forming your opinions in this case? A: No, they were generally relied upon.  Much like your law school text books."); 52:23-53:20; 56:9-59:14; 60:15-23.

With regard to  the extent to which introducing Mr. Fye's testimony would disrupt the trial, the Court notes that no trial date is set.  Therefore, at this time this factor does not weigh for or against a finding that Plaintiffs' violation of Rule 26 was substantially justified or harmless.  *Alexander*, 2010 WL 363390 at *3.  However, the Court notes that Plaintiffs have requested a jury trial.  While the parties have provided no argument on this issue, it is clear that Defendant cannot properly cross-examine an expert witness when Defendant does not know what information that expert is relying on to form his opinions.  Such a cross-examination would likely be disruptive and difficult for a jury to understand if it were allowed to proceed.

Finally, regarding whether Plaintiffs and Mr. Fye acted in good faith, the parties offer no argument.  However, even if Plaintiffs had acted in good faith, that "alone would not be enough to overcome the other factors."  *Jacobsen*, 287 F.3d at 954.

After examining all of the above factors, the Court concludes that Plaintiffs' failure to comply with Rule 26 was neither substantially justified nor harmless.  The Court addresses sanctions in Section II.C. below.

**B.    Request for Sanctions Relating to Deposition Conduct**

Defendant also requests sanctions for Mr. Fye's conduct during his deposition.

17

*Motion* [#57] at 13-14.  "The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court."  *Bowers v. Nat'l Collegiate Athletics Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007).  Pursuant to Fed. R. Civ. P. 37(a)(4), an evasive response during a deposition, such as those Mr. Fye is accused of providing, is treated "as a failure to disclose, answer, or respond."  In addition, Fed. R. Civ. P. 30(d)(2) allows the Court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."  Generally this rule is used when someone other than the deponent, usually an attorney, is accused of interrupting the deposition.  *See, e.g.*, *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 4688836, at *8 (D. Kan. Oct. 6, 2011) (applying Fed. R. Civ. P. 30(d)(2) to counsel who violated Fed. R. Civ. P. 30(c)(2) by directing the deponent not to answer); *Deville v. Givaudan Fragrances Corp.*, 419 Fed. App'x 201, 209 (3d Cir. 2011) (affirming magistrate judge's imposition of sanctions pursuant to Fed. R. Civ. P. 30(d)(2) upon finding that attorney "testified on behalf of her witness by way of suggestive speaking objections"); *Craig v. St. Anthony's Medical Ctr.*, 384 Fed. App'x 531, 533 (8th Cir. 2010) (affirming district judge's award of sanctions pursuant to Fed. R. Civ. P. 30(d)(2) due to "a substantial number of argumentative objections together with suggestive objections and directions to the deponent to refrain from answering questions without asserting a valid justification" pursuant to Fed. R. Civ. P. 30(c)(2)).  Rule 30(d)(2) is also routinely used to sanction parties who fail to appear at a properly-noticed deposition.  *See, e.g.*, *Billips v. NC Benco Steel, Inc.*, No. 5:10-CV-095-RLV-DCK, 2011 WL 3444161, at *6 (W.D.N.C. Aug. 8, 2011) (awarding sanctions pursuant to Fed. R. Civ.

18

P. 30(d)(2) where "either Plaintiff appeared at his examination and contrary to the rules failed to proceed, or he failed to appear"); *Miles v. Elliot*, No. 94-4669, 2011 WL 857320, at *8 (E.D. Pa. Mar. 10, 2011) (awarding sanctions pursuant to Fed. R. Civ. P. 30(d)(2) where designee failed to appear for his properly-noticed deposition); *Hill v. R+L Carriers Shared Servs., LLC*, No. C 09-01907 CW (MEJ), 2010 WL 4977763, at *4 (N.D. Cal. Dec. 2, 2010) (same).  However, there is nothing in the language of the rule that excludes the deponent from being the person who impedes, delays, or frustrates fair examination. Moreover, there is case law to support the imposition of sanctions pursuant to Rule 30 based on the deponent's own behavior during the deposition.  *See Rapaport v. Soffer*, 2013 WL 6451768, at *5 (D. Nev. Dec. 9, 2013); *Van Stelton v. Van Stelton*, 2013 WL 5574566, at *18 (N.D. Iowa Oct. 9, 2013) (awarding sanctions based on the behavior of the deponent and stating "the express language of Rule 30(c) applies to any participant in the deposition . . . ."); *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 193 (finding deponent's behavior violated Rule 37(a)(3)(B)(i) and Rule 30(d)(2) and imposing sanctions on the deponent).

The imposition of sanctions under Rule 30(d)(2) requires the movant to

> identify language or behavior that impeded, delayed, or frustrated the fair examination of the deponent.  *See* Fed.R.Civ.P. 30(d)(2).  When making this inquiry, the court will look to: (1) the specific language used (*e.g.,* use of offensive words or inappropriate tones); the conduct of the parties (*e.g.,* excessive objections or speaking objections); and (3) the length of the deposition.  Second, the movant must identify "an appropriate sanction." *Id.*

*Dunn v. Wal-Mart Stores, Inc.*, 2013 WL 5940099, at *5 (D. Nev. Nov. 1, 2013).

Here, Defendant offers citation to many portions of Mr. Fye's deposition in support of its argument that his behavior was improper and that he engaged in "personal attacks against [Defendant]'s counsel." *Motion* [#57] at 5-8, 7 n.1-2.  The Court has reviewed the

deposition transcript in its entirety and concludes that Mr. Fye's behavior during his deposition was designed to and did impede Defendant's counsel from gathering information from Mr. Fye, which was the purpose of the deposition.  For example, early in the deposition, Defendant's counsel asked Mr. Fye a series of questions relating to the books he identified in his September Report.

> Q. Item D says Recovery of Damages for Bad Faith, McCarthy.  Is McCarthy the author of that publication?
>
> A. Do I get to point out the record of this complete waste of time that you're engaging in?
>
> Q: Let the judge decide that.
>
> Mr. Ridley: Mark the record.
>
> The Witness: Yeah, we will.  And I take back on what I said about I'm sure you're not trying to be disingenuous.  Actually, insurance was invented before this claim occurred too.  But go ahead.

*Fye Trans.* [#57-8] at 62:4-13.

Later, Defendant's counsel asked Mr. Fye about his history serving as an expert witness in other lawsuits:

> Q. Mr. Fye, moving along, December 21, 2011, Allstate v. Total Rehab and Medical Centers appears to be a Palm Beach, Florida case.  Can you tell me generally what that case was about?
>
> A. I don't feel free to discuss that case on the record, other than it deals with Total Rehab as a defendant in an Allstate case about medical practice and medical billing.   And there are lots of stipulations and confidentiality agreements in place that I don't want to even come close to violating.
>
> Q: Does that case involve UM/UIM?
>
> A: You know, I'm forced to ask that same question.  What is it about my answer that you didn't get?
>
> Mr. Ridley: Please mark the transcript.

Q: Did it involve UM/UIM.  It's an easy answer, right? If it did, it's probably a matter –

A: You're trying to get me to violate a protective order.  I get it.  Move on.  I'm not violating a protective order.  And I would appreciate it if you'd stop that.

Q: I'd appreciate if you'd stop with the verbal ad hominems which have gone on this entire deposition.

A: Well, they're well deserved.  Just move on with your so-called deposition, your aggressive deposition.

*Fye Trans.* [#57-8] at 106:21-107:20.

At times during his deposition, Mr. Fye appeared to believe that it was his role to

direct the deposition:

Q: Have you seen any amended versions of the CCPR since 1995?

A: Yes.

Q: Which, from what years?

A: I don't know.

Q: Do you know what was in effect in terms of the CCPR at the Colorado claims office at the time the Carrolls made their claim?

A: I don't even understand the question.

Q: Do you know what version of the CCPR, if any, was in effect at the time the Carrolls made their claim?

A: No, I don't know what, what version of it was being used in Colorado.

Q: So you don't know what was in the CCPR or what had been –

A: It would be –

Q: – removed from –

A: It would be interesting if we could trust –

Q: Let me finish the question, please.

21

A: – if we could trust the production if you were being candid with this question.

Q: All right.  Can you please –

A: But you're being deliberately –

Q: – pay me the courtesy of allowing me to finish my question?

A: You don't deserve courtesy for that question.

Mr. Ridley: Could you please mark the transcript.

The Witness: You're playing a game with the court and the jury, and I don't appreciate it.  You're withholding documents, you won't produce them, and now you're calling into question whether this fundamental program that describes Allstate claim methods even exists.

...

Q: Mr. Fye, you don't know what was in the Allstate CCPR at the time Mr. Palmer adjusted the Carroll claim, correct?

Mr. Kaudy: Objection to form and foundation, asked and answered.  You can certainly supplement.

The Witness: Could you read that back?

...

The Witness: That's not totally correct and not totally incorrect.

Q: What was in the Allstate CCPR at the time Mr. Palmer adjusted the Carrolls' claims?

The Witness: Your Honor and members of the jury, these volumes are the CCPR training manual, which he's shortened to CCPR.  It means that Claim Core Process Redesign training manual.  And this is the manual.  He's trying to make the suggestion –

Mr. Ridley: Object.

The Witness: – that this manual did not exist, but I have it in my hand.

Mr. Ridley: Move to strike.

The Witness: What was in the manual was this page, that has become page one.  Now, does that answer your question?

Q: No, it doesn't.

A; Oh, good.

Q: It does not answer the question.  But with respect to those blue folders, have you ever produced those before in this case?

A: No.

Q: Okay.  Can you tell me what the date on the documentation in those blue folders is?

A: July, 1995.

Q: So with respect to those blue folders that you just flourished to the camera, do you know if those were even in effect when Mr. Carroll, when Mr. Palmer adjusted the Carrolls' claims?

A: I do know that.

Q: You do know what, that they were?

A: I do know whether they were in effect.  I'm answering your question.

Q: Were they in effect?  Those blue folders that you just held up, were those in effect when Mr. Palmer adjusted the Carrolls' claims?

A: Listen carefully.

Q: No, you listen carefully.  The question was were those blue folders –

A: Listen carefully to my answer  –

Q: – in effect when –

A: – and stop lecturing me.

Mr. Kaudy: Can we take a little break here, please?

Mr. Ridley: – when Mr. Palmer adjusted the Carrolls' claim?

A: Listen to my question –

Q: It's a simple question.

A: – and stop lecturing me.  And don't tell me it's a simple question.

Mr. Kaudy: May we – we just need to go off the record.

The Witness: I'll answer the question right now.

Mr. Ridley: I agree with Mr. Kaudy.  Thank you.

...

Q: Mr. Fye, do you understand that Mr. Palmer made offers to resolve the Carrolls' UM/UIM claims in May of 2011?

A: I don't want to proceed with the deposition until I give my answer that you interrupted.

*Id.* at 122:13-127:22; *see also id.* at 142:16-145:9 ("Q: I didn't finish my question.  A: But let me tell you that you're wrong about that."); 154:7-155:5 ("A: I don't get to say move to strike that question as being provocative, do I?"); 156:5-159:17.

In addition, throughout the deposition, Mr. Fye added unnecessary commentary regarding defense counsel's skills and methods, and personally attacked defense counsel.

Q: Do you know of any direct link between those goals and how Mr. Palmer adjusted the Carrolls' claims?

A: No, other than what I've testified about already.

Q: On the bottom of page three –

A: If you adopt claim handling methods and you expect them to be implemented, then you try to recognize people who are effective in changing. And I had a document in front of me a minute ago that said that, but I can't see it right now.

Q: And I'm just interested in Mr. Palmer and the Carrolls' claim, so –

A: Because you're trying to make it personal to Mr. Palmer and hide behind him.

Mr. Ridley: It's nonresponsive.

The Witness: Or put this all on him.

Mr. Ridley: Move to strike.

The Witness: That's a shameful way to defend Allstate.

Mr. Ridley: Please mark the exhibit again, Susan. Thank you.

Q: Mr. Fye, do you know of any document that discusses Mr. Palmer's compensation in connection with the Carroll claim?

A: Mr. Palmer, it's your attorney, not me, that's doing this. He's making it all about you.

*Id.* at 148:5-149:8; *see also id.* at 156:5-159:17; 174:2-17 ("Some lawyer you've chosen.");

191:22-193:14 ("These people are underneath a lot of circumstances, and you're frivolously

complaining about their behavior. Shame on you."); 194:12-16; 197:2-8; 197:23-198:3;

198:20-25; 200:10-201:10; 205:14-15; 215:22-25.

Mr. Fye's repeated obstructionist tactics and attacks on defense counsel are

offensive to the judicial process. The fact that Plaintiffs retained Mr. Fye as an expert

witness highlights even more strongly how inappropriate his behavior was during his

deposition. The Court addresses sanctions in Section II.C. below.

## C.      Sanctions

As discussed above, the Court finds that Plaintiffs violated Rule 26 and Mr. Fye

violated Rule 30. Imposition of sanctions for Plaintiffs' violation of Rule 26 is governed by

Rule 37. Rule 37(c)(1) states that where a party fails to make a disclosure required by Rule

26(a) or Rule 26(e)(1), that party may not use at hearings, on a motion, or at trial any

witness or information not so disclosed, unless the Court determines that the failure to

disclose was substantially justified or harmless. However, Rule 37 allows the Court to

impose a lesser sanction. *See* Fed. R. Civ. P. 37(1)(A)-(C). When determining the appropriate sanction, Rule 37 "require[s] the court to keep considerations of justice in mind when imposing sanctions for rule violations." *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996). While the rule "provide[s] a list of potential options for the court's consideration, including costs and fee shifting, [it] ultimately leave[s] it to the court's discretion to make such orders . . . as are just." *Id.* (internal quotation omitted). Mr. Fye's violation of Rule 30 is governed by Rule 30(d)(2) which allows the Court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party."

In its Motion, Defendant requests that Mr. Fye's opinions be excluded. *Motion* [#57] at 15. In the alternative, Defendant asks the Court to strictly limit Mr. Fye's testimony to the opinions included in his September Report and the November Supplement. *Id.* Defendant also requests costs and attorney's fees based on Mr. Fye's conduct during his deposition. *Id.* Here, discovery is closed, the dispositive motion deadline has passed, and the Final Pretrial Conference is scheduled to occur on April 1, 2014. While a trial date has not been set, based on the current posture of the case, allowing Plaintiffs to supplement their Rule 26 disclosures at this date or allowing Defendant to redepose Mr. Fye would not cure the prejudice suffered by Defendant. Further, Mr. Fye's obstructionist behavior during his deposition gives the Court little basis to conclude that reopening discovery would likely remedy the violations of Rules 26 and 30.

Accordingly, the Court finds that striking Mr. Fye's expert opinions and excluding him as an expert is the appropriate sanction in this case. *See Kern River Gas Transmission Co. v. 6.17 Acres of Land, More or Less, in Salt Lake County, Utah*, 156 F.App's 96, 102-

26

03 (10th Cir. Dec. 2, 2005) (unpublished decision) (affirming district court's refusal to permit party to present expert testimony at trial due to Rule 26 violation); *Alexander*, 2010 WL 363390 at *3 (striking affidavits submitted in support of motion for summary judgment); *Salgado by Salgado*, 150 F.3d at 742 (affirming district court's imposition of sanction of precluding witnesses from testifying due to violation of Rule 26).   In addition, pursuant to Fed. R. Civ. P. 30(d)(2), the Court awards Defendant its costs and attorney's fees relating to taking Mr. Fye's deposition.   Rule 30(d)(2) states that such costs and fees shall be imposed against the individual who "impedes, delays, or frustrates the fair examination of the deponent."   Accordingly, Defendant's costs and attorney's fees relating to taking Mr. Fye's deposition shall be entered against Mr. Fye.   *See GMAC Bank*, 248 F.R.D. at 194 (imposing sanctions on the deponent).

### III.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#57] is **GRANTED in part** and **DENIED in part**.  The Motion is **GRANTED** to the extent that it seeks to exclude Mr. Fye's expert opinions and to exclude him from testifying in this case.  The Motion is also **GRANTED** to the extent it seeks an award of Defendant's costs and attorney's fees relating to taking Mr. Fye's deposition.

IT IS FURTHER **ORDERED** that Mr. Fye's September Report [##57-4, 78-2], November Supplement [##57-6, 78-7], and April Supplement [#57-11] are **STRICKEN**.

IT IS FURTHER **ORDERED** that Defendant shall submit a fee application for its costs and attorney's fees relating to taking Mr. Fye's deposition on or before **March 21,**

**2014**.

Dated:  March 4, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge